until assigned to the new, and the Revised Statutes retain the same principle.

In the case of *Hinds* v. *Doubleday* (21 Wend. 227), it is expressly stated that the powers of the old sheriff in relation to all prisoners in his custody do not determine with the termination of his term of office, but cease only within ten days after the service of a certificate that the new sheriff had entered upon the duties of his office. It would, therefore, seem to be established, both by statute and authority, that until the certificate is served by the incoming sheriff upon the outgoing sheriff, the powers of the outgoing-sheriff as to prisoners in his custody remain unchanged ; and the fact that he has turned over some prisoners to the incoming sheriff does not affect his powers as to the custody of prisoners not transferred ; this is expressly recognized in the case of *Smallman* v. *Lanes* (*supra*).

I think, therefore, that the judgment of the court below was entirely right, and that no action could be maintained upon the facts established upon the trial of this action.

The judgment must, therefore, be affirmed, with costs.

CHARLES P. DALY, Ch. J., and VAN BRUNT, J., concurred.

Judgment affirmed, with costs.

---

ELIPHALET W. BLISS *et al.*, Respondents, *against* FREDERICK
T. LOCKE *et al.*, Appellants.

(Decided March 7th, 1881.)

In a contract by the plaintiffs to build certain machines for the defendants, the plaintiffs covenanted and agreed to construct the machines in a certain manner, and that the machines would do certain work in a manner described in the contract. The complaint, in an action to recover the contract price of the machines, alleged a delivery and acceptance by the defendants of the machines under the contract; and the answer alleged that the plaintiffs had failed to perform the agreement upon their part, and that the defendants had refused to accept the machines manufactured by the plaintiffs, because they failed to conform to the agreement. *Held,*

that an instruction to the jury that if the defendants absolutely accepted machines that were defective they must pay for them, and if the machines were accompanied by a warranty that they would accomplish a certain result, the remedy of the defendants was for a breach of that warranty, was error, for which a judgment for the plaintiffs must be reversed, since such judgment would be a bar to any action by the defendants for a breach of the warranty contained in the agreement.

APPEAL from a judgment of this court entered upon the verdict of a jury, and from an order denying a motion for a new trial.

The action was brought to recover the price of certain machines alleged to have been manufactured and delivered by the plaintiffs to the defendants under a special contract.

The agreement between the parties was as follows:

"Agreement made and entered into this 22d day of November, one thousand eight hundred and seventy-five, by and between Frederick T. Locke, William A. Butler, Patrick H. Redmond, Thomas J. Byrne, Joseph A. MacDonald, Alfred Ivers and James Gilroy, of the city of New York, parties of the first part, and Eliphalet W. Bliss and James H. Williams, of the city of Brooklyn, composing the firm of Bliss & Williams, parties of the second part.

"Now this Indenture witnesseth that the said parties of the second part, in consideration of the sum of one dollar to them in hand paid, by the said parties of the first part, the receipt whereof is hereby acknowledged, and the further sum of eight thousand dollars to be paid as hereinafter specifically set forth, hereby agree to build and deliver to the said parties of the first part, two machines for manufacturing lead traps from sheet lead.

"And the said parties of the second part covenant and agree to build the said machines in a durable, skillful and workmanlike manner, and will, on the delivery of said machines to the parties of the first part, as hereinafter provided, guarantee that the said machines are capable of making eight hundred finished traps each in ten hours.

"And that they will construct said machines in such manner as to make said traps of the sizes known as $1\frac{1}{4}$, $1\frac{1}{2}$, 2 and 4-inch,

and that they will make said traps of five and six-pound sheet lead, and said machines are to be so constructed that in manufacturing said traps of all sizes under four inches the trap screw socket will be pressed in and be similar to those now manufactured by the National Trap Company of the city of New York.

"And said machines are to make full **S** and one half **S** traps of the above sizes, perfect in shape, and to be of the same quality as the sample $1\frac{1}{4}$ trap now in the office of the National Trap Company, and made by the parties of the second part, and this the said parties of the second part agree to guarantee.

"And the said machines are also to be so built that the flanges upon said traps, when the two halves come together, shall have an open space on the outer edge for the lead to run in when melted or burned, the space to be thus—

but the two sides to fit close, and to make said traps with or without trap screws, but in either case the said machines are each to make eight hundred traps in ten hours.

"And the said parties of the second part further agree to furnish the said parties of the first part with all the dies, punches and formers necessary for and used in the manufacture of said traps, and all said articles to be delivered with the said machines as hereinafter mentioned.

"And the said machines, with the drawings and patterns thereof, are to be sent to and put up in the shop of the National Trap Company, within three months after the date of this contract, in good running order (but the said parties of the second part may put up the said machines as they complete the same), and in case the said machines do not work in the

Bliss *v.* Locke.

manner before specified, then the said parties of the second part are to put the same in good running order and condition, and give to the said parties of the first part the before mentioned guarantees; and the said parties of the first part, upon the said parties of the second part fully completing and performing the agreement on their part to be kept and performed, agree to pay the said parties of the second part, the said sum of eight thousand dollars.

"And it is further agreed that this agreement shall bind the heirs, executors, administrators and assigns of the respective parties hereto.

"In witness whereof, the parties hereto have set their hands and seals this day and year just above written.

"Signed, sealed and delivered }
  in the presence of   }
     RICHARD A. MORTIMER.

        FRED. T. LOCKE,   [SEAL.]
        WM. A. BUTLER,    "
        PATRICK H. REDMOND,  "
        T. J. BYRNE,     "
        JOSEPH A. MACDONALD,  "
        ALFRED IVERS,    "
        JAMES GILLROY,   '
"Witnessed by—
    ALTON H. FANCHER.
        ELIPHALET W. BLISS,   "
        JAMES H. WILLIAMS,   "

"The shafting, pulleys and foundation are to be furnished by the Trap Company, and not by Bliss & Williams; also the cutter is furnished by the company, and any patterns which do not pertain to the trap business, and which is a pattern belonging to the regular business of Bliss and Williams, are to be retained by them, and not given to the company as called for."

In pursuance of this contract certain machines were set up in the defendants' premises and were operated thereafter for some-

time by both the plaintiffs and defendants. The plaintiffs, claiming that there was an acceptance of said machines by the defendants, and that they had complied with their contract, made a demand upon the defendants for the contract price, which was refused, and thereupon this action was commenced to recover such price. The defendants denied the right to recover upon the ground that the plaintiffs failed to perform the agreement upon their part, and that the machines never could perform that which the plaintiffs had contracted they would do.

Upon the trial of the case the court charged that if the machines were defective and the plaintiffs absolutely accepted machines that were defective they must pay for them, and if the machines were accompanied by a warranty that they would accomplish a certain result the remedy of the defendants was for the breach of that warranty. To this the defendants' counsel excepted.

It was also claimed by the defendants that the evidence showed that there was no acceptance upon the part of the defendants up to the time of the commencement of the suit, and that the evidence further showed there was no compliance upon the part of the plaintiffs with their contract.

The jury found for the plaintiffs, and a motion by the defendants for a new trial was denied, and judgment for the plaintiffs was entered on the verdict. From the judgment and the order denying their motion for a new trial the defendants appealed.

*Osborne E. Bright*, for appellants.—The charge that notwithstanding a verdict for the full amount of the plaintiffs' claim, the defendants would have an action for the breach of warranty, was erroneous. The issues submitted to the jury involved the question of performance of the contract as well as of acceptance and waiver, and the verdict upon these issues will stand as *res adjudicata* in favor of the plaintiffs, and unless the judgment be reversed, will be a bar forever to any action by the defendants upon the warranty (*Bellinger* v. *Craigue*, 31 Barb. 534; *Davis* v. *Talcott*, 12 N. Y. 184; *Gates* v. *Preston*,

41 N. Y. 113; *Collins* v. *Bennett*, 46 N. Y. 490; *Blair* v. *Bartlett*, 75 N. Y. 150).

*William Henry Arnoux*, for respondents.—If there was a warranty, the defendants had no right to return the machines. If the contract was not performed, their only remedy is on the warranty, either by suit brought or recoupment in this case. This is the settled law in regard to a sale *in presenti*, and although it has been held differently on an executory contract, the distinction now seems to be abolished and the same rule applies to both (*Day* v. *Pool*, 52 N. Y. 416; *Parks* v. *Morris Axe Co.*, 54 N. Y. 586). If there is no warranty, the buyer must offer to return the goods as soon as the defects are discovered, and thereby rescind the contract. If there is a warranty, he must stand on that and seek his remedy in damages for the breach (*Dounce* v. *Dow*, 57 N. Y. 16).

VAN BRUNT, J.—[After stating the facts as above.]—If there were no other question or exception in this case than the one to the charge above mentioned it would seem necessary to grant a new trial in this case. The plain interpretation of that instruction to the jury is, and it was undoubtedly the intention of the learned judge who tried this case to have the jury understand, that notwithstanding any verdict they might render in this action, the defendants would have a right to recover damages for the breach of the warranty contained in the agreement.

It is hardly now necessary to cite authorities to show that that position is entirely incorrect. A recovery for the purchase price of the machines in this action would be a bar to a recovery in any action brought by the defendants for a breach of the warranty contained in the agreement above mentioned (*Davis* v. *Talcott*, 12 N. Y. 184; *Gates* v. *Preston*, 41 N. Y. 113; *Blair* v. *Bartlett*, 75 N. Y. 150). A judgment in favor of the plaintiffs in this action was an adjudication that the plaintiffs had complied with their agreement, and which the defendants in another action would not be allowed to deny.

The answer of the defendants in this case expressly alleged

that the plaintiffs had failed to perform the agreement mentioned in the complaint upon their part, and that was the main issue presented. They also allege, as a defense, that in consequence of the failure of the plaintiffs to perform their contract in the manufacture of the machines, they had refused to accept them; and these were the issues which were tried by the jury. It is true that the complaint nowhere alleges, in so many words, that they had performed all the conditions of the agreement or contract upon their part, but it does allege a delivery and acceptance by the defendants of the machines under the contract. And this allegation, upon the part of the plaintiffs, was equivalent to an assertion upon their part that they had complied with the terms of their contract. The acceptance of the machines would raise an implication that those machines did comply with the requirements of the contract. A right to recover the purchase-price of the machines in this action necessarily depended upon the fulfillment by the plaintiffs of the terms and conditions of the contract upon their part. All of the evidence upon the part of the plaintiffs was introduced for the purpose of showing that the defendants, after having tried the machines, accepted them as a compliance with the contract, and that, therefore, they were bound to pay for them.

From the nature of the complaint, it would seem that it was assumed upon the part of the plaintiffs that the guaranty referred to in the contract was something independent of the contract itself; but an examination of the contract shows that the plaintiffs covenanted and agreed to construct the machines in a certain way, and that they would perform certain work in the manner therein mentioned; and if the machines did do the work in that manner, the terms of the guaranty were fulfilled. This being the distinct issue which was presented, a judgment in favor of the plaintiffs in this case was necessarily finding that the plaintiffs had complied with the terms of their contract with the defendants.

The case of *Davis* v. *Tallcot*, above cited, seems to be expressly in point, and the facts therein almost entirely identical. In that case an action was brought upon a written agreement,

whereby the plaintiffs agreed to manufacture and put up in the defendants' mill, machinery of a specified kind and quality, for the price of $900. The defendants, by way of answer, denied that the plaintiffs had performed their part of the agreement, and alleged non-performance, and claimed damages for breach of the agreement. Upon the trial the question of damages for the breach of the agreement was withdrawn, and judgment was rendered for the plaintiffs for a certain sum. The defendants in that action then commenced an action against the plaintiffs therein, for damages for breach of the agreement upon their part. The answer set up a former adjudication and the court held that the adjudication in the prior action was a bar to the one subsequently brought. The court say "It is obvious that, by withdrawing their claim to damages, the then defendants did not waive their right to insist upon their defense. The plaintiffs, notwithstanding, must have established their title to the price stipulated, by proof that the machinery was made within the time and in the manner called for by the agreement, and the vendees were at liberty to meet and combat these proofs by counter evidence upon their part. Now, this is precisely what was done, or, rather, the necessity for introducing evidence to sustain the action was superseded by the admission of the then defendants in open court, 'that they were indebted to the manufacturers for the causes of action mentioned in their complaint.' As the cause of action and the indebtedness of the defendants were, by the complaint, made dependent upon a full performance of the contract by the parties who instituted the suit, the concession of the defendants was equivalent to an admission on the record to that effect; and the report of the referee, followed by the judgment of the court, consequently estops the parties to that suit from ever after questioning that fact in any controversy arising upon the same agreement."

It might be entirely true that if the defendants in this action had paid voluntarily to the plaintiffs the purchase-price of the machines, they could have recovered any damages which they might have sustained by reason of the breach of the warranty contained in the agreement; but where an action is

brought for the purchase-price, any defense which the party has to the payment of that purchase-price, or any part thereof, must be set up in that action, or he is barred from ever claiming on account thereof.

It would, therefore, seem to be entirely well established that the defendants in this action could maintain no action against the plaintiffs for any breach of the warranty contained in the agreement.

This was a very important point to be considered by the jury in hearing the testimony in this case. They may have come-to the conclusion to which they did, supposing that if any damages had been occasioned by reason of the failure of the plaintiffs to comply with their contract in reference to the performance of the machines alleged to have been delivered by them, the defendants, by a future action upon the warranty contained in that agreement, would have the right to recover back such damages as they might prove that they had sustained.

It is not necessary in this case for us to determine whether or not under the facts of this case an action of breach of warranty could have been brought by the defendants against the plaintiffs, or whether they could have counterclaimed damages on account of such breach in this action. Neither is it necessary for us to attempt to reconcile the conflicting decisions upon the point as to whether, after acceptance of merchandise under an executory contract, the vendee has any remedy as for damages for a breach of warranty. It is sufficient that the learned judge so instructed the jury in this case, and that after judgment in favor of the plaintiffs under no circumstances would such an action lie.

There are other questions which are raised upon this appeal, which would seem to be equally fatal to the judgment, but these, in view of the conclusion to which I have arrived as to this one exception, it is not now necessary to consider.

The judgment must, therefore, be reversed, with costs to the appellants to abide the event.

CHARLES P. DALY, Ch. J., and BEACH, J., concurred.

Judgment reversed, with costs to appellant to abide event.